IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| RICKY CHARLES GILLON, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 4:18-CV-629-P |
| | § | |
| LORIE DAVIS, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| Respondent. | § | |

## **OPINION AND ORDER**

Before the Court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by Petitioner, Ricky Charles Gillon, a state prisoner confined in the Correctional Institutions Division of the Texas Department of Criminal Justice, against Lorie Davis, director of that division, Respondent. After considering the pleadings and relief sought by Petitioner, the Court has concluded that the petition should be denied.

## **I. BACKGROUND**

In March 2016 a jury in Tarrant County, Texas, Case No. 1433031R, found Petitioner guilty of aggravated assault of a family member with a deadly weapon and the trial court assessed his punishment at 60 years imprisonment. Clerk's R. 171, ECF No. 13-12. Petitioner's conviction was affirmed on appeal and the Texas Court of Criminal Appeals refused his petition for discretionary review. Docket Sheet 1-2, ECF No. 13-2. Petitioner also filed a post-conviction state habeas-corpus application challenging his conviction, which was denied by the Texas Court of Criminal Appeals without written order on the findings of the

trial court. SHR[1] 2-17, ECF No. 13-20; Action Taken, ECF No. 13-16.

The state appellate court summarized the evidence at trial as follows:

> Charlene Moore testified that she and [Petitioner] had started dating in May 2014. But roughly two months later, on July 10, 2014, while the two were sitting in her vehicle, Moore told [Petitioner] that she wanted to break up. After they talked inside her Hummer H2 for over half an hour, [Petitioner] went to his pickup truck, returned to Moore's Hummer, and tossed a box containing an engagement ring in Moore's lap. Moore refused the ring; [Petitioner] responded by stabbing her in the neck. Hearing Moore scream, her nephew pulled [Petitioner] out of Moore's car.
>
> [Petitioner] then ran to the Hummer's driver's side, climbed inside through the sunroof, and resumed his attack. A photograph shows that the Hummer's sunroof was large enough for someone to climb into the vehicle with relative ease.
>
> The attack stopped when Moore agreed to drive away with [Petitioner]. Instead, though, Moore drove down the street, made a U-turn, got out of her Hummer, and ran into her house.
>
> Once inside, Moore told her mother to call 9-1-1. Moore then watched [Petitioner] bash her car before fleeing in his pickup.
>
> When the police arrived, they saw a two-inch vertical cut on the left side of Moore's throat that exposed her esophagus. The officers called for medical help, and Moore was eventually transported to the trauma center at John Peter Smith Hospital.
>
> In Moore's car, the police saw blood on the driver's seat, floorboard, and console. On the driver's side floorboard, they found a handle for a straight razor. Outside Moore's car, they found a bloody straight razor.
>
> Moore's nephew told the police that [Petitioner] had attacked Moore. The police went to [Petitioner]'s home, and after a long stand-off, they arrested him there.

---

[1] "SHR" refers to the record of Petitioner's state habeas proceeding in WR-88,183-01.

> While in an ambulance at the scene, [Petitioner] admitted to a detective that he had cut Moore's neck. Inside [Petitioner]'s pickup, the police saw a red stain on the center console that appeared to be blood. They also found a shaving kit containing a box of razor blades on the front seat.
>
> The following day, the detective went to the hospital to meet with Moore. Moore had tape around her neck and a tube attached to her mouth, so the detective instructed Moore to communicate with him by squeezing his hand once for yes and twice for no. Moore responded yes when asked if [Petitioner] was her attacker.

Mem. Op. 2-3, ECF No. 13-3.

## II. ISSUES

In three grounds for relief, Petitioner claims that: (1) the trial court erred by overruling his objection to the admission of his recorded statement to police; (2) he received ineffective assistance of trial counsel; and (3) he received ineffective assistance of appellate counsel. Pet. 6-7, 19,[2] ECF No. 1.

## III. RULE 5 STATEMENT

Respondent does not believe that Petitioner's claims are unexhausted or that the petition is successive or time-barred. Resp't's Answer 6, ECF No. 14.

## IV. DISCUSSION

### A. Standard of Review

A § 2254 habeas petition is governed by the heightened standard of review provided for by the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254.

---

[2]Because there are pages inserted into the form petition, the pagination in the ECF header is used.

3

Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court. 28 U.S.C. § 2254(d)(1)-(2); *Harrington v. Richter,* 562 U.S. 86, 100-01 (2011). This standard is difficult to meet and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Richter*, 562 U.S. at 102.

Additionally, the statute requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The presumption of correctness applies to both express and implied factual findings. *Young v. Dretke,* 356 F.3d 616, 629 (5th Cir. 2004); *Valdez v. Cockrell,* 274 F.3d 941, 948 n.11 (5th Cir. 2001). It is the petitioner's burden to rebut this presumption by clear and convincing evidence. *Id.*

Further, when the most recent state court to consider a constitutional issue provides a "reasoned opinion," a federal habeas corpus court must "review[ ] the specific reasons given by the state court and defer[ ] to those reasons if they are reasonable." *Wilson v. Sellers,* — U.S. —, 138 S. Ct. 1188, 1191-92 (2018). Under those circumstances, a federal court should "'look through' the unexplained decision to the last related state-court decision providing" particular reasons, both legal and factual, "presume that the unexplained decision

adopted the same reasoning," and give appropriate deference to that decision. *Id.* In other words, federal habeas-corpus courts confronted with an unexplained state court decision "are to 'look through' the decision to an earlier state court opinion and presume that the earlier one provides the relevant rationale." *Thomas v. Vannoy,* 898 F.3d 561, 568 (5th Cir. 2018) (citing *Wilson,* 138 S. Ct. at 1192).

**B. Trial Court Error**

Under his first ground, Petitioner claims that the trial court erroneously overruled his objection to admission of his recorded statement to police while he was sitting in an ambulance at the scene, in violation of articles 38.22 and 38.23 of the Texas Code of Criminal Procedure and the Fifth and Fourteenth Amendments of the United States Constitution. Pet. 6, ECF No. 1. The state appellate court, the last state court to adjudicate the issue on the merits, addressed the issue based largely on state law as follows:

**[PETITIONER]'S STATEMENT**

*The trial court originally grants [Petitioner]'s motion to suppress his incriminating statement.*

The trial court initially suppressed [Petitioner]'s statement based on the lack of an express waiver under article 38.22 of the code of criminal procedure. These statutorily mandated rights are commonly known as *Miranda* warnings. The trial court stated that on the audio, [Petitioner] did not expressly waive his rights. After reading [Petitioner] his rights, the detective simply asked if he understood them, and [Petitioner] answered, "Yes." The detective then launched directly into his questions rather than ask [Petitioner] whether he was willing to waive those rights. On that basis, the trial court granted [Petitioner]'s motion to suppress.

*During the State's case-in-chief, [Petitioner] cross-examines the detective*

5

*regarding the extent of his investigation, and the State rehabilitates the detective on redirect.*

During the State's case-in-chief, [Petitioner] cross-examined the detective. The detective did not remember requesting a fingerprint analysis on anything and denied having various items tested for blood. He also admitted not sending any items off for DNA testing.

On redirect, the detective testified that he did not feel that he needed DNA testing because there was no identity issue and no unknown person. Additionally, the detective testified that no other weapon was found at the scene.

*[Petitioner] moves for a directed verdict.*

After the State rested, [Petitioner] moved for a directed verdict. When asked on what basis, [Petitioner]'s counsel responded, "Failed to sufficiency of the evidence [sic ], lack of proven identity of a deadly weapon." Although this oral motion was not a model of clarity, [Petitioner] appeared to be arguing that the State failed to prove that the straight razor was the deadly weapon used in the offense. The trial court denied [Petitioner]'s motion.

*[Petitioner] presents evidence regarding the lack of fingerprints on the razor.*

[Petitioner] then put on a police-department fingerprint examiner. He testified that he tested the razor for fingerprints in June 2015—nearly a year later—and found none.

On the State's cross-examination, the examiner noted that fingerprints were not always recoverable. When asked if it was true that an investigation will dictate how in depth he goes in processing certain evidentiary items, the fingerprint examiner responded, "Yes. At Fort Worth that would be a true statement." He also agreed that if there were no issues about the suspect's identity, the investigation might not warrant a full-scale search for latent prints. He added that the investigator decides what he wants done. The fingerprint examiner agreed that the longer one waits to take a print off an object, the less likely one finds an identifiable print. In this instance, the examination for prints occurred roughly a year after the incident.

*The State moves to admit [Petitioner]'s inculpatory statement.*

Outside the jury's presence, the State argued that [Petitioner] had opened the door by raising a false impression regarding identity and by suggesting the police did a shoddy investigation and advocated for admitting [Petitioner]'s statement to correct that false impression. The trial court agreed, . . . .

[Petitioner] requested a jury instruction on the voluntariness of his statements—an article 38.23 instruction.[2] The trial court agreed and gave that instruction when the case later went to the jury.[3]

[2]Article 38.23 provides:

(a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

[3]We're a bit perplexed at this article 38.23 instruction. When the trial court granted [Petitioner]'s motion to suppress, it had already ruled that the detective had violated [Petitioner]'s *Miranda* rights. Despite that violation, it later admitted [Petitioner]'s statement on another basis—that [Petitioner] had left a false impression with the jury and that admitting his statement was necessary to correct it. Consequently, even if the jury found that [Petitioner]'s *Miranda* rights had been violated—exactly as the trial court had—that finding should have been irrelevant. It was admissible regardless.

*During the State's rebuttal, it presents [Petitioner]'s statement.*

In rebuttal, the State presented the testimony of the detective who had taken [Petitioner]'s oral statement; this time, the trial court allowed the State to play the audio recording of [Petitioner]'s admissions. The jury thus heard

7

[Petitioner]'s admitting to having his shaving bag in his pickup and grabbing his razor; stating that he and Moore were arguing when "all hell had broke loose"; and admitting cutting Moore's neck.

*Final arguments.*

During final arguments, [Petitioner] initially argued that the jury should not consider his statement because he had not waived his *Miranda* rights. [Petitioner] then questioned the State's investigation for its failure to test the blood, to search for fingerprints, and to check for DNA. [Petitioner] argued that the police did not do the various tests because they had already made up their minds. [Petitioner] conceded that something obviously happened to Moore, but the jury still did not know what that was. [Petitioner] did not dispute that Moore was injured but contended that her story about how she was hurt "made absolutely no sense." [Petitioner] finished with arguments again urging the jury not to consider his statement because the detective had violated his *Miranda* rights.

In response to the argument that the State's investigation was inadequate, the prosecutor argued:

> I'm going to break some news to you and hope—take it however you want. I'm an African-American, black. I've known this for awhile, over 40–something years. You can test me all day, but you're going find that out. The same thing about this injury that happened with Ms. Charlene Moore. You can test all that evidence if you want, it's going to get you back to the same conclusion as what she told you. I don't need any test for that. You ain't got to take no genetic test to tell me I'm African-American. That's an insult to your intelligence for somebody to come in here and tell you some information that what you heard and what you saw and what all the evidence support is not the conclusion that happened.

*The jury charge.*

The jury was instructed, in accordance with article 38.23, that before it could consider [Petitioner]'s oral statement, the jury had to believe beyond a reasonable doubt that the detective gave [Petitioner] sufficient warnings and that [Petitioner] voluntarily waived those rights.

**[PETITIONER]'S POINT**

In one point, [Petitioner] argues that the trial court erred by overruling his objection to the admission of his statement to the police. Assuming, without deciding, that the trial court erred by admitting [Petitioner]'s statement, for the reasons set out below we hold that the error, if any, was harmless.

**DISCUSSION**

The erroneous admission of evidence is generally non-constitutional error and not grounds for reversal unless it affects an accused's substantial rights. Substantial rights are not affected if the reviewing court has fair assurances that the erroneous exclusion of evidence had no influence or only a slight influence on the jury. Put another way, to be reversible, the jury must have been "substantially swayed" by the improperly-admitted evidence. In making its assessment, the reviewing court should consider everything in the record, the nature of the evidence supporting the verdict, the character of the alleged error, and how it relates to other evidence in the record.

The claimed error was harmless for two reasons.

First, the trial court's article 38.23 instruction instructed the jury not to consider [Petitioner]'s statement if it was involuntary. The trial court had previously suppressed [Petitioner]'s statement because he did not expressly waive his *Miranda* rights. On this record, we cannot tell if the jury actually considered [Petitioner]'s statement or whether it agreed that [Petitioner]'s statement should not be part of the jury's deliberations.[4]

> [4][Petitioner] notes that the jury, during deliberations, requested to hear his audio statement again. Although true, the record does not show whether the jurors wanted to hear his statement for purposes of determining whether his *Miranda* rights had been violated, which hinged on whether he knowingly and voluntarily waived his rights in the absence of an express waiver, or whether they had already determined his rights had not been violated and wanted to listen to it substantively

Second, the evidence was overwhelming. A jury might question the complainant's identification if the complainant had seen an assailant only once

under stressful circumstances. [Petitioner], however, was not a stranger to Moore; he was her boyfriend. She was not likely to misidentify her attacker. Moore's testimony established that [Petitioner] stabbed her in the neck. And although Moore's nephew did not testify, there was evidence that he too had identified [Petitioner] as Moore's attacker.

The handle to a razor blade was found in Moore's Hummer, which was where Moore testified that the assault occurred, and a razor blade was found at the scene.

The police found a shaving kit with razor blades in [Petitioner]'s pickup. Moore testified that [Petitioner] went to his pickup and returned moments before the assault.

In short, the other evidence corroborated Moore's testimony that [Petitioner] attacked her in her Hummer and stabbed her in the neck with a sharp object. As the detective told the jury when initially questioned about his limited investigation, and as the prosecutor argued to the jury in his closing arguments, blood tests, fingerprints, and DNA would all have been overkill. [Petitioner]'s confession, even if improperly admitted, was overkill as well. This was not a close case where the disputed evidence might have tipped the scales.

On this record, then, we cannot say that the jury must have been "substantially swayed" by any improper admission of [Petitioner]'s statement. The record presented no reason to question Moore's testimony. Assuming the jury considered [Petitioner]'s statement at all, we are persuaded that its admission had, at most, only a slight influence—not enough to constitute reversible error. We hold that [Petitioner]'s substantial rights were not violated and hold that the error was harmless.

Mem. Op. 3-11, ECF No. 13-3 (emphasis in original) (citations omitted).

To the extent Petitioner asserts a violation under the Texas Constitution or state law, the claim presents no cognizable basis for federal habeas-corpus relief. *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991). To the extent Petitioner asserts a violation under the United States Constitution, he fails to demonstrate that the state court's

decision is contrary to clearly established federal law as determined by the United States Supreme Court or is based on an unreasonable determination of the facts in light of the record before the state court. No Supreme Court precedent holds that *Miranda* violations are not subject to harmless-error. *See Jones v. Davis,* 927 F.3d 365, 370-71(5th Cir. 2019), *petition for cert. filed,* (U.S. Oct. 31, 2019) (No. 19-6465). The harmless-error standard in the context of federal habeas review requires that a court grant relief on the basis of a constitutional error in the trial court "only if the error had a substantial and injurious effect or influence in determining the jury's verdict." *Goodwin v. Johnson,* 132 F.3d 162, 181 (5th Cir. 1997) (citing *Brecht v. Abrahamson,* 507 U.S. 619, 638 (1993)). Thus, even assuming trial error, the Court agrees that, absent Petitioner's statement to police, the evidence remains not only sufficient to support the jury's verdict but overwhelming as to establish his guilt beyond a reasonable doubt. Thus, it cannot be said that admission of the statement substantially effected or influenced the jury's decision. *See Brecht v. Abrahamson,* 507 U.S. 619, 638 (1993). Petitioner is not entitled to relief under ground one.

**C. Ineffective Assistance of Counsel**

Under his second and third grounds, Petitioner claims that he received ineffective assistance of counsel at trial and on appeal. Pet. 6-7, 19, ECF No. 1. A criminal defendant has a constitutional right to the effective assistance of counsel at trial and on a first appeal as of right. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *Anders v. California*, 386 U.S. 738, 744

(1967). *See also Styron v. Johnson,* 262 F.3d 438, 450 (5th Cir. 2001) (applying the *Strickland* standard to ineffective-assistance claims against appellate counsel). An ineffective-assistance claim is governed by the familiar standard set forth in *Strickland v. Washington*. 466 U.S. at 668. To establish ineffective assistance of counsel under this standard, a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Id.* Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id.* at 687, 697.

In applying this standard, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial or appellate strategy. *Id*. at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. Where a petitioner's ineffective-assistance-of-counsel claims have been reviewed on their merits and denied by the state courts, federal habeas relief will be granted only if the state courts' decision was contrary to or involved an unreasonable application of the *Strickland* standard in light of the state-court record. *Richter,* 562 U.S. at 100-01 (quoting *Williams,* 529 U.S. at 410)); *Bell v. Cone*, 535 U.S. 685, 698-99 (2002). Thus, a federal court's review of state-court decisions regarding ineffective assistance of counsel must be "doubly deferential" so as to afford "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow,* 134 S. Ct. 10, 13 (2013) (quoting *Cullen v. Pinholster,* 563 U.S.

12

170, 190 (2011)).

Although raised in Petitioner's state habeas proceeding, the state habeas court held no hearing and entered no express factual findings or conclusions of law on the claims and the Texas Court of Criminal Appeals denied relief without written order. Supp. SHR 2-5, ECF No. 13-19. When the Texas Court of Criminal Appeals denies relief in a state habeas-corpus application without written order, it is a denial on the merits. *Ex parte Torres,* 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). Under those circumstances, a federal court may assume the state court applied correct standards of federal law to the facts, unless there is evidence that an incorrect standard was applied, and imply fact findings consistent with the state court's disposition. *Townsend v. Sain,* 372 U.S. 293, 314 (1963); *Catalan v. Cockrell,* 315 F.3d 491, 493 n.3 (5th Cir. 2002); *Valdez v. Cockrell,* 274 F.3d 941, 948 n.11 (5th Cir. 2001); *Goodwin v. Johnson,* 132 F.3d 162, 183 (5th Cir. 1997). Therefore, implying findings of fact necessary to support the state courts' disposition, and assuming the state courts applied the *Strickland* standard to Petitioner's claims, the state courts' rejection of the claims is not objectively unreasonable under the doubly-deferential standard.

In ground two, Petitioner asserts that his trial counsel was ineffective by "failing to make the proper objection and get a ruling" regarding the admission of his statement to police and "failing to know the law on statements and evidence." Pet. 6-7, ECF No. 1. Petitioner's claims are conclusory, without evidentiary or legal support, and do not support any federal habeas relief. *See Ross v. Estelle,* 694 F.2d 1008, 1011-12 (5th Cir. 1983).

Furthermore, even assuming deficient performance, the overwhelming evidence of Petitioner's guilt precludes his demonstrating prejudice, as required to establish his claim of ineffective assistance of counsel. The mere fact that the jury requested to "relisten" to his recorded statement during its deliberation does not establish prejudice and the state court correctly noted that any potential prejudice was ameliorated by the trial court's article 38.23 instruction.

Petitioner also claims that his trial counsel was ineffective by failing to inform him concerning the state's plea offer. Pet. 7, ECF No. 1. Petitioner concedes that he is unable to locate any documents concerning a plea offer in Case No. 1433031R. Nevertheless, he directs the Court to an "Inventory Docket Plea Offer Acknowledgment" filed in "Cause No. 1397977 + 1397978 + 1397980," prior to his re-indictment in Case No. 1433031R, which states in unequivocal terms that, at least as of February 26, 2015, "no offer" had been made by the state. *Id.* at 17; Pet'r's Resp. 2, ECF No. 17. He also directs the Court to the trial court's docket sheet in Case No. 1397980R, also prior to his re-indictment in Case No. 1433031R, indicating that the case was set for the "Plea Docket." Pet'r's Resp. Ex. C, doc. 17. This is not however clear and convincing evidence that the state ever formally offered Petitioner a plea, either verbally or in writing, in Case No. 1433031R. Pet'r's Resp. Ex. C, ECF No. 17. Absent such evidence, Petitioner's claim is conclusory and does not support any federal habeas relief. *See Ross,* 694 F.2d at 1011-12.

In ground three, Petitioner claims that his appellate counsel was ineffective by failing

to raise his ineffective-assistance-of-trial-counsel claims on appeal. Pet. 19, ECF No. 1. However, appellate counsel is not required to raise every conceivable argument urged by his client on appeal, regardless of merit. *Smith v. Robbins,* 528 U.S. 259, 287-88 (2000). It is counsel's duty to choose among potential issues, according to his judgment as to their merits and the tactical approach taken. *Jones v. Barnes,* 463 U.S. 745, 749 (1983). Petitioner fails to raise any meritorious claims upon which he would have prevailed on appeal. Prejudice does not result from appellate counsel's failure to assert meritless claims or arguments on appeal. *See United States v. Wilkes,* 20 F.3d 651, 653 (5th Cir. 1994). Furthermore, a state postconviction habeas-corpus application, and not direct appeal, is generally the appropriate vehicle for bringing forth ineffective-assistance-of-counsel claims in the state courts. *See Robinson v. Texas,* 16 S.W.3d 808, 810-11 (Tex. Crim. App. 2000); *Thompson v. Texas,* 9 S.W.3d 808, 813-14 nn.5-6 (Tex. Crim. App. 1999). Petitioner is not entitled to relief under grounds two and three.

## V. CONCLUSION

For the reasons discussed, Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED. A certificate of appealability is also DENIED.

**SO ORDERED** on this 19th day of November, 2019.

Mark T. Pittman
UNITED STATES DISTRICT JUDGE